STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-05-040

PETER and CAROLYN
BIEGEL

Plaintiffs

v.                                                    ORDER ON 80B APPEAL

TOWN OF STANDISH

Defendant
and

PIT STOP FUELS, INC. and
DANA LAMPRON

Intervenors

## BEFORE THE COURT

Before the court is plaintiffs Peter and Carolyn Biegel's ("Plaintiffs")

appeal, pursuant to M.R.Civ.P. 80B, for review of defendant Town of Standish

Planning Board's ("Planning Board") June 6, 2005 approval of intervenors Pit

Stop Fuels, Inc. and Dana Lampron's ("Defendants") site plan application.

## BACKGROUND

On February 14, 2005, Defendants filed an application with the Planning

Board for a permit to construct a gas station, convenience store and fuel oil

business on a 1.68 acre parcel located off Route 25 in the Town's Village Center

District, ("VC District"). The VC District is comprised of "areas where ...

residential, commercial and municipal activities exist and will be encouraged in

the future, with site plan review providing careful controls to ensure the

compatibility of future development." Standish Land Use Ordinance § 181-7

("Ordinance"). The Planning Board's approval describes the development as:

1

> Retail business and fueling station. Retail Business includes a 2,832 square foot building, fuel oil business with underground storage tanks plus associated fuel rack with canopy. Fueling station includes 1 diesel and 5 gasoline pumps with underground storage tanks and canopy. The project also includes construction of an access road to Colonial Market Place as well as sidewalks and other travel land improvements along Route 25.

Ordinance § 181-7(D) states that, within the VC District "retail businesses over 2,000 square feet"... "shall first require approval from the Board of Appeals [("ZBA")] as a special exception... Such uses shall also require site plan review and approval from the Planning Board." Accordingly, Pit Stop applied for a special use exception with the ZBA, which was approved on February 28, 2005. This special use exception approved "a retail and commercial use 2,772 square foot[1] building in the village-commercial zone." Record Tab 6, p. 1 (hereinafter "R.T.___ at ___".) The Planning Board thereafter reviewed Defendants' site plan, and approved it on July 11, 2005 in a written decision issued with conditions of approval.

The Planning Board imposed nineteen conditions on its approval of the site plan, including:

> This site plan approval is limited to retail sales and vehicular fuel sales only. No mixing of fuels to produce another product as per our code that would be classified as manufacturing. No wholesale distribution of fuels gas or heating oil as per our code that would be classified as wholesale distribution.

R.T. 31 at 1.

Plaintiffs claim that the "fuel oil business with underground storage tanks plus associated fuel rack with canopy" described in the Site Plan approval is not actually a "retail business" but a "warehouse operation" which is a prohibited use in the VC District. *See* Ordinance §§ 181-7, 181-7(D), and 181-64(A)(2).

---

[1] The final site plan approval cites a 2,832 square foot building.

Related to this, Plaintiffs claim that the Planning Board's Site Plan approval of the underground storage tanks for heating oil exceeded the special exception use approval given by the ZBA. Plaintiffs also claim that the Board erred in finding that the fuel oil business will not alter the existing character of the surrounding area. *See* Ordinance § 173-73(I)[2]. Finally, Plaintiffs claim that Defendants failed to provide evidence that their plan would address water quality issues associated with runoff from the project.

## DISCUSSION

### A. Jurisdiction Over Plaintiffs' Appeal

Prior to addressing Plaintiffs' arguments on appeal, the court must address Defendants' claim that the part of this appeal attempting to overturn the Planning Board's characterization of the fuel oil business constitutes an impermissible collateral attack on the ZBA's February 28, 2005 decision, from which no appeal was taken.

In this decision, the ZBA was charged with reviewing, as a special use exception, the suitability of a "retail business over 2000 square feet." The record on appeal indicates that all of the parties, the Plaintiffs, Defendants, ZBA and Planning Board thought that this approval related only to the development of a building in excess of 2000 square feet, and was not an approval of the particular businesses to .be operated on the site.[3] However, notwithstanding this general

---

[2] § 173-73(I) states:
No final site plan shall be approved unless, in the judgment of the Planning Board, the applicant has proven that... the proposed site plan will not alter the existing character of the surrounding zoning district or division to the extent that it will become a detriment or potential nuisance to said zoning division or district.
[3] Defendants' representative, in pitching the special use exception to the ZBA stated, "since the building is larger than 2,000 square feet, it is our understanding that the Appeals Board does have to review it as a Special Exception." R.T. 5 at 4. ZBA member Otis-Higgins reiterated this understanding minutes later, just prior to the ZBA vote, stating: "I think what they are seeking

3

understanding, the Ordinance controls the scope of the ZBA's review, and any understanding the parties may have to the contrary cannot trump the ZBA's grant of special exception approval of a "retail business over 2000 square feet."

The Ordinance vests authority to approve special use exceptions with the ZBA. *See* Ordinance § 181-64(A)(2). All other uses are either allowed or not allowed by the terms of the Ordinance itself. *See* Ordinance § 181-7. Accordingly, the only body with authority to permit or not permit a use is the ZBA. In this case, the Ordinance directed the ZBA to consider whether a "retail business in excess of 2000 square feet" would have "an unreasonably adverse effect on the health, safety, or general welfare of the general public" and whether "the use requested will significantly devaluate abutting property." The ZBA was charged with making these determinations with reference to the plans presented to them. Although the ZBA did not discuss the underground fuel oil storage tanks at the special use exception hearing, it had before it plans that indicated the existence and placement of the fuel oil storage tanks, and parking for the heating oil delivery trucks, and the fuel rack.

From the record, it appears the ZBA was not necessarily alert to the threshold question of whether the plans presented to them for approval of a special use exception for a retail business over 2000 square feet were, in fact,

---

from us tonight is a Special Exceptions [permit] based on the square footage… you've got to go before the Planning Board for the rest of it." R.T. 5 at 12. In addition, prior to the final site plan hearing before the Planning Board, the Planning Board Administrator issued an email to the Planning Board stating: "I believe I mistakenly said that the Planning Board couldn't review the overall size of the use because it had been approved by the [ZBA]. This was only partially true… Planning Board can't deny this application because you feel the size of the retail building is too large. It could deny the project for any other reason listed in § 181-73." R.T. 12 at 1. Finally, at the final site plan hearing, Planning Board member Billington rejected Defendants' assertion that the ZBA had done anything more than approve the building size: "The [ZBA] considered the Special Exception know[n] as Retail Sales over 2,000 square feet… they did not weigh any other issue except that… what their charge is is to decide the size of the retail business. That was their charge." R.T. 19 at 93-4.

4

plans for a "retail business." *See* R.T. 5 at 4 and 12, R.T. 19 at 93-4. However, the court cannot consider the adequacy of the ZBA's review of the special use exception, as Plaintiffs did not appeal from the ZBA's approval.

## B. The Character of Defendant's Fuel Oil Business

In the alternative, Plaintiffs claim that the underground fuel oil storage tanks approved as part of the site plan exceeded the special use exception granted by the ZBA. The Planning Board considered what the ZBA had approved in the special use exception, and concluded that the "retail business over 2000 square feet" approved by the ZBA encompassed the fuel oil business and its component parts, including the storage tanks. *See* R.T. 31 at 1 (stating, "Retail business includes... fuel oil business with underground storage tanks plus associated fuel rack with canopy.") Accordingly, the question on appeal is: was the Planning Board's understanding of the scope of the ZBA's special use exception approval supported by substantial evidence in the record?

The Planning Board had evidence before it that the ZBA had approved a special use exception on substantially the same plans presented to it for site plan review. Although the record strongly indicates that the ZBA did not consider whether the underground fuel oil storage tanks should be allowed as part of the special use exception, see fn. 3 *supra*, the ZBA's approval was predicated upon its finding that the plans presented to it in fact constituted a "retail use." Moreover, the Planning Board had no authority of its own to make findings on the nature of the use, although the parties argued the use issue before the Planning Board, and the Planning Board did find that the fuel oil tanks constituted part of a "retail business." However, this is not reversible error, as the Planning Board was in fact constrained to accept the ZBA's implicit use determination, and to conclude

5

that the fuel oil business, including the fuel oil storage tanks, were part of the retail business approved by the ZBA.

### C. Does the Project Alter the Existing Character of the Surrounding Zoning District?

Next, Plaintiffs assert that the record compels the conclusion that the development will alter the existing character of the surrounding zoning district to the extent that it would become a detriment or potential nuisance. The Planning Board found that it would not, stating:

> The project does not alter the character of the Village Center zoning district, where mixed uses are allowed. A special exception permit was obtained from the Board of Appeals for the retail use over 2000 SF. This development is screened from residential dwellings by existing stands of trees and proposed tree plantings. Condition of approval # 1 limits the number of fuel oil delivery trucks parked at the site. Condition of approval # 8 precludes parking spaces in front of the building face.

R.T. 31 at 3. Plaintiffs' argument that the Board was unjustified in reaching this conclusion is based in its characterization of the fuel oil business as a warehouse operation. The Board examined this question, and concluded that the nature and scale of the operation would not be out of character for the area.

### D. Storm Water Runoff

Finally, Plaintiffs claim that Defendants failed to provide evidence that their plan would address water quality issues associated with runoff from the project. This claim is really two claims: first, that as a matter of law, the Ordinance requires the Planning Board to address water quality issues associated with runoff, and second, that Defendants failed to provide evidence to support a finding in their favor on this inquiry.

The site plan approval standard under which Plaintiffs make these claims is Ordinance § 181-73(D): "No final site plan shall be approved unless, in the

6

judgment of the Planning Board... the site plan adequately provides for the soil and drainage problems that the development will create." The Ordinance contemplates that the Planning Board will review site plans for "fueling stations" within the VC District, § 181-7(C)(8), and created site plan approval requirements relating to approval of such projects. Plaintiffs point out that public safety is at the heart of the Planning Board's purpose with regard to site plan review. *See* Ordinance § 181-69. They assert that this makes the quality of water runoff a necessary consideration for the Planning Board. However, the Ordinance imposes no special site plan approval requirements on the development of fueling stations other than noting that they are not allowed in the Shoreland Zone. *See* Ordinance § 181-7(C)(8). While it would be permissible, given adequate evidence in the record, for the Planning Board to deny a permit based on the contamination of water runoff from a fueling station, the Plaintiffs mistake this authority for a non-existent requirement. The plain language of § 181-73(D) does not compel a finding that the quality of water runoff must meet any particular standard. Moreover, in spite of Plaintiffs protestations, the record contains no evidence from any expert or scientific source that water contamination from Defendants' proposed use would pose a threat to the area. Thus, as a matter of law, Plaintiffs have not shown that Defendants failed to present necessary evidence of compliance or that the Planning Board failed to make findings on a necessary requirement.

**The entry is:**

Plaintiffs' 80B appeal is DENIED.

Dated at Portland, Maine this 13th day of April, 2006.

Robert E. Crowley
Justice, Superior Court